**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **In Re:**                           ) | |
|                                     ) | **Case No. 08-13293-SSM** |
| **VIJAY K. TANEJA,** *et al.*,[1]     ) | **Chapter 11** |
|                                     ) | **Jointly Administered** |
|    **Debtor.**                       ) | |
| _____ ) | |
|                                     ) | |
| **H. JASON GOLD, TRUSTEE,**          ) | |
|                                     ) | |
|    **Plaintiff,**                    ) | |
| v.                                  ) | **Adv. Pro. No. _____** |
|                                     ) | |
| **COMMONWEALTH LAND TITLE**          ) | |
| **INSURANCE COMPANY,**               ) | |
|                                     ) | |
| and                                 ) | |
|                                     ) | |
| **PARK STREET TITLE, INC.,**         ) | |
|                                     ) | |
| and                                 ) | |
|                                     ) | |
| **CHANCELLOR TITLE & SETTLEMENTS,**  ) | |
| **INC.**                             ) | |
|                                     ) | |
|    **Defendants.**                   ) | |

## COMPLAINT

Plaintiff, H. Jason Gold, in his capacity as Chapter 11 Trustee for estates of the above-captioned debtors (the "Trustee"), by and through undersigned counsel, hereby files his complaint against Defendants, Commonwealth Land Title Insurance Company

---

[1] The Debtors in these jointly administered cases include Elite Entertainment, Inc. (08-13286-SSM), Financial Mortgage, Inc. (08-13287-SSM), NRM Investments, Inc. (08-13290-SSM), Taneja Center, Inc. (08-13292-SSM) and Vijay K. Taneja (08-13293-SSM).

1

James P. Campbell, Esquire (VSB #25097)
*Campbell Flannery, P.C.*
19 East Market Street
Leesburg, Virginia 20176
(703) 771-8344/Telephone
(703) 777-1485/Facsimile
Special Counsel for H. Jason Gold,
  Chapter 11 Trustee

("Commonwealth"), Park Street Title, Inc. ("Park Street") and Chancellor Title & Settlements, Inc. ("Chancellor") and states as follows:

1. This action arises out of a series of fraudulent real estate transactions involving Financial Mortgage, Inc. ("FMI"), Commonwealth, Park Street, Chancellor and Vijay K. Taneja ("Taneja").

## PARTIES

2. FMI, a Virginia corporation, is the debtor in Case No. 08-13287-SSM filed in this Court. FMI's principal place of business was, prior to bankruptcy, 11211 Waples Mill Road, Suite 200, Fairfax, Virginia.

3. H. Jason Gold was appointed by the United States Bankruptcy Court for the Eastern District of Virginia ("Bankruptcy Court") as the Chapter 11 Trustee in the FMI and all related bankruptcies pursuant to an Order entered on or about July 22, 2008.

4. FMI was a mortgage originator and mortgage company, which had as many as fifty (50) employees who originated and closed loans secured by real estate to consumers, and also sold said loans on the secondary mortgage market. FMI was in business since the 1990's and originated mortgages in Virginia and several other states.

5. Taneja was the President and sole shareholder of FMI. Taneja was also an officer and shareholder of Elite Entertainment, Inc.; NRM Investments, Inc.; and Taneja Center, Inc. — the other debtor entities in these administratively consolidated Chapter 11 proceedings.

6. At the time of the Petition Date, Taneja was not an officer or director of FMI.

7. Defendant, Commonwealth Land Title Insurance Company is a Nebraska corporation.

8. Commonwealth is a "title insurance company licensed in the Commonwealth" of Virginia as that phrase is defined by Virginia's Real Estate Settlement Registration Act, Section 6.1-2.32, in particular.

9. Park Street is a Virginia corporation with its principal place of business at 1121 Waples Mill Road, Suite 320, Fairfax, Virginia.

10. Chancellor is a Virginia corporation with its principal place of business at 4343 Plank Road, Suite N220, Fredericksburg, Virginia.

11. In transactions with Virginia real estate, Park Street and Chancellor are "settlement agents" (collectively "Settlement Agents") as that term is defined by Virginia's Consumer Real Estate Settlement Protection Act, Virginia Code Section 6.1-2.19 through 6.1-2.29 ("CRESPA"). Each Settlement Agent's authority to conduct settlements was conditioned expressly upon the Settlement Agent being appointed by a "title insurance company licensed in the Commonwealth" in accordance with CRESPA.

12. In transactions with Maryland real estate, the Settlement Agents are "title insurance producers" as that term is defined by Section 10-121 of the Maryland Code. Each Settlement Agent's authority to conduct settlements was conditioned expressly upon the Settlement Agent having "an appointment with the title insurer with which the contract of title insurance may be placed." *See* Maryland Code Section 10-121.1.

13. At all times relevant, Commonwealth appointed the Settlement Agents as Commonwealth's agent under CRESPA and the Maryland Code, pursuant to various

3

agency agreements and closing protection letters ("CPL") issued to FMI as lender and the property owners entering into financing transactions with FMI.

14. As a matter of law in Virginia, specifically Section 38.2-1801(A) of the Code of Virginia, "a licensed agent shall be held to be the agent of the insurer that issued the insurance solicited by or through such agent in any controversy between the insured or his beneficiary and the insurer." At all times relevant, the Settlement Agents solicited insurance as agents for and on behalf of Commonwealth as its agents.

15. At all times relevant, the Settlement Agents were Commonwealth's authorized agents as a matter of fact and as a matter of law, in relation to the residential real estate transactions identified in this complaint.

## JURISDICTION AND VENUE

16. This Court has personal jurisdiction over Commonwealth pursuant to Fed.R.Civ.Pro. 4(k)(1)(a) and Virginia's long-arm statute, Virginia Code Ann. Section 8-01-328.1, because all of the Trustee's claims arise out of conduct by Commonwealth, acting directly and through Commonwealth's authorized Settlement Agents, within the Commonwealth of Virginia. This Court has personal jurisdiction over Commonwealth because Commonwealth has transacted business in Virginia for purposes of Virginia Code Ann. Section 8.01-328.1(A)(1) by seeking and obtaining permission to transact business in Virginia by underwriting title insurance policies in Virginia and doing so in Virginia.

17. This Court has personal jurisdiction over the Settlement Agents pursuant to Fed.R.Civ.Pro. 4(k)(1)(a), because all of the Trustee's claims arise out of conduct by the Settlement Agents that occurred within the Commonwealth of Virginia. This Court

4

has personal jurisdiction over the Settlement Agents because the Settlement Agents have transacted business in Virginia for purposes of Virginia Code Ann. Section 8.01-328.1(A)(1) by transacting business with FMI in Fairfax County, Virginia.

18. This Court has jurisdiction pursuant to 11 U.S.C. Section 510 and 28 U.S.C. Section 1334. This is a core proceeding pursuant to 11 U.S.C. Section 157(b)(2).

19. Venue is proper in this Court under 28 U.S.C. Sections 1391(a)(2) and 1409(a) because the events giving rise to the claims asserted in this action occurred, and the real estate settlements at issue, occurred within the Eastern District of Virginia. Specifically, the contracts at issue were executed within this District, the tortious acts alleged in this complaint were committed within this District and the conspiratorial scheme and acts in furtherance thereof occurred within this District.

20. The Trustee brings this action against Commonwealth to recover losses sustained by FMI. The Trustee alleges breach of contract based on Commonwealth's CPLs, title commitments and title insurance policies that Commonwealth, issued through its Settlement Agents. The Trustee also brings claims for negligence based upon Commonwealth's responsibility — as a principal — for the tortious, fraudulent, conspiratorial and/or negligent acts of its Settlement Agents in conspiracy with Taneja.

**Transactions with Closing Protection Letters**

21. A closing protection letter is an instrument issued by a title insurance carrier, in this case, Commonwealth, which grants to a lender, and in certain circumstances, the property owner, protections against risks that might occur in the settlement process with Commonwealth's authorized settlement agent and title agent.

5

22. The CPLs at issue in this case, and as enumerated herein, specifically protected FMI against the following:

> *2. Fraud or dishonesty of the Issuing Agent or Approved Attorney in handling your funds or documents in connection with such closings to the extent such fraud or dishonesty relates to the status of the title to said interest in land or to the validity, enforceability and priority of the lien of said mortgage on said interest in land.*

23. The Trustee is in possession of the CPLs issued by Commonwealth, in favor of FMI, in regard to the following real estate transactions or settlements closed by Park Street in Virginia in the total sum of $5,461,150:

   a. a July 22, 2005 closing protection letter related to the settlement for borrower Pawan K. Bajpai for the property located at 2791 Centerboro Drive, #472, Vienna, Virginia;

   b. a December 14, 2005 and/or a September 28, 2005 closing protection letter related to the settlement for borrower Melissa Kim for the property located at 7715 Lafayette Forest Drive, #102, Annandale, Virginia;

   c. an October 18, 2005 closing protection letter related to the settlement for borrower Anita Rashid for the property located at 2791 Centerboro Drive, #472, Vienna, Virginia;

   d. an October 18, 2005 closing protection letter related to the settlement for borrower Anita Rashid for the property located at 4862 Eisenhower Avenue, #465, Alexandria, Virginia;

6

  e. a July 11, 2005 closing protection letter related to the settlement for borrower Leela Singh for the property located at 2791 Centerboro Drive, #472, Vienna, Virginia;

  f. an August 23, 2005 closing protection letter related to the settlement for borrower Satish Sood for the property located at 2791 Centerboro Drive, #472, Vienna, Virginia;

  g. an August 23, 2005 closing protection letter related to the settlement for borrower Satish Sood for the property located at 4862 Eisenhower Avenue, #465, Alexandria, Virginia;

  h. an April 5, 2005 and/or an October 19, 2005 and/or a November 29, 2005 closing protection letter related to the settlement for borrower Vijay Taneja for the property located at 2791 Centerboro Drive, #472, Vienna, Virginia;

  i. a January 26, 2006 closing protection letter related to the settlement for borrower Laxmi Upadhyay for the property located at 5339 Buxton Court, Alexandria, Virginia; and

  j. a September 19, 2005 closing protection letter related to the settlement for Hua Xu for the property located at 2791 Centerboro Drive, #472, Vienna, Virginia.

24. On information and belief, the Trustee believes that CPLs were issued by Commonwealth, in favor of FMI, in regard to the following real estate transactions or settlements that were conducted by Park Street in Virginia in the sum of $2,570,000:

    a.    Borrower Melissa Kim for the property located at 7715 Lafayette Forest Drive, #102, Annandale, Virginia with a closing date on or about September 14, 2005;

    b.    Borrower Anita Rashid for the property located at 2791 Centerboro Drive, #472, Vienna, Virginia with a closing date on or about October 19, 2005 and/or November 7, 2005;

    c.    Borrower Satish Sood for the property located at 20311 Rosemeadow Court, Gaithersburg, Maryland with a closing date on or about March 21, 2006;

    d.    Borrower Satish Sood for the property located at 2791 Centerboro Drive, #472, Vienna, Virginia with a closing date on or about August 9, 2005;

    e.    Borrower Satish and Uma Sood for the property located at 20311 Rosemeadow Court, Gaithersburg, Maryland with a closing date on or about March 21, 2006; and

    f.    Borrower Hua Xu for the property located at 2791 Centerboro Drive, #472, Vienna, Virginia with a closing date on or about September 21, 2005.

25. On information and belief, the Trustee believes that a CPL was issued by Commonwealth, in favor of FMI, in regard to the following real estate transactions or settlements that were conducted by Chancellor in Virginia in the sum of $610,000:

    a.    Borrower Senait Fersha for the property located at 13940 Alderton Road, Silver Spring, Maryland with a closing date on or about April 8, 2005.

**The Settlement Agents' Agency Relationship with Commonwealth**

26. On information and belief, Commonwealth and the Settlement Agents each entered into a written agreement in which Commonwealth appointed the Settlement Agent to be Commonwealth's agent in the Commonwealth of Virginia and with respect to Chancellor in Maryland. Commonwealth, in its written agreements with the Settlement Agents, authorized the Settlement Agents to sign, countersign and issue, on Commonwealth's behalf, commitments, binders, title reports, certificates, guarantees, title insurance policies, endorsements and other agreements by which Commonwealth assumes liability for the condition of title to real estate located in the Commonwealth of Virginia and the State of Maryland.

27. In accordance with the Virginia Real Estate Settlement Registration Act, (Section 6.1-2.32), CRESPA (Virginia Code Section 6.1-2.19 through 6.1-2.29) and the Virginia Insurance Code (Section 38.2-1801(A)), in relation to transactions secured by real estate in Virginia, and Sections 10-121 and 10-121.1 of the Maryland Code, the Settlement Agents were the agents of Commonwealth, as a matter of law, when conducting the real estate transactions and settlements identified in this complaint, and when soliciting lender's title insurance and owner's title insurance.

28. In addition to being Commonwealth's authorized agents as a matter of law, the CPLs, together with title commitments and title policies, provided FMI with contractual protections against the frauds by the Settlement Agents in each real estate

settlement transaction. Thus, the CPLs also created an agency relationship binding Commonwealth to protect FMI against the frauds, negligence and errors perpetrated by the Settlement Agents in the settlement transaction process.

29. Commonwealth's CPLs confirm specifically that the Settlement Agents were Commonwealth's agent for the purpose of each "closing" or "settlement". A copy of an exemplar Commonwealth CPL issued in the subject transactions is attached as Exhibit A. The terms and conditions of the protections offered by the CPLs are incorporated herein as if specifically stated.

30. In addition to the agency relationship as a matter of law and CPLs, title commitments and title policies, on information and belief, Commonwealth and the Settlement Agents entered into a written agency agreement. Any limitation of the obligation of Commonwealth to third parties in relation to real estate settlements is against public policy and not binding upon FMI because of the absence of notice to FMI and by virtue of the statutory requirements enumerated in Paragraphs 11, 12 and 27 above.

31. In addition to the foregoing, the Settlement Agents possessed the apparent authority of Commonwealth when conducting real estate settlements, as the Settlement Agents could only conduct such settlements after having been appointed as an agent by Commonwealth in accordance with CRESPA, the Virginia Real Estate Settlement Registration Act and Maryland Code Sections 10-121 and 10-121.1.

32. On information and belief, Commonwealth exerted significant control over the Settlement Agents, including, but not limited to, the following:

a. Requiring the Settlement Agents to maintain and preserve files in a manner specified in the written agency agreements between Commonwealth and the Settlement Agents;

b. Requiring the Settlement Agents to submit monthly reports to Commonwealth;

c. Establishing a right to audit and review the Settlement Agents' files, including the Settlement Agents' policy inventory, title insurance files (including any material, files, records or accounts relating to the issuance of title insurance forms), and all financial and business records relating to any escrow closing or settlement functions conducted by the Settlement Agents;

d. Requiring that the Settlement Agents comply with Commonwealth's title insurance rate schedules;

e. Requiring the Settlement Agents to adopt specific procedures for handling settlement funds;

f. Imposing time limits regarding the frequency with which the Settlement Agents must reconcile their accounts, including escrow accounts;

g. Requiring the Settlement Agents to submit an income statement and balance sheet to Commonwealth every year, in a form and including content "satisfactory" to Commonwealth; and

      h.      Reserving the right to investigate the personal reputation, character, personal characteristics and mode of living of the Settlement Agents' employees.

33.      On information and belief, because of the audit processes conducted by Commonwealth concerning the Settlement Agents' operations as agents of Commonwealth in Virginia, the Settlement Agents were exempted from the audit process conducted by Virginia state officials pursuant to CRESPA.

## BREACHES OF DUTY

34.      The acts and omissions committed by the Settlement Agents, in accordance with the conspiracy with Taneja, included, but were not limited to, the following:

      a.      The Settlement Agents falsified settlement documents to create the appearance that an arms-length settlement transaction occurred, and executed instruments such as deeds, deeds of trust, deed of trust promissory notes and settlement statements, which were false and misleading;

      b.      The Settlement Agents prepared settlement documents, including deeds, deeds of trust, deed of trust promissory notes and settlement statements, wherein the settlement statements identified the specific sum of existing deeds of trust to be paid and satisfied at settlement, when said statements were false;

      c.      The Settlement Agents received sums from FMI, and in some cases, from the borrower, to fund the specific amount of real estate

        transactions and fraudulently and illegally disbursed those funds to Taneja or as directed by Taneja, rather than to fund the discharge of existing liens against the real property as set forth in the settlement statements; and

    d.    The Settlement Agents misappropriated funds forwarded for settlements involving FMI, and fraudulently and unlawfully disbursed those funds to Taneja, or at Taneja's direction; and

    e.    The Settlement Agents improperly notarized documents or accepted as true and accurate improperly or fraudulently notarized documents when the Settlement Agents knew or should have known about the impropriety.

35. The acts and omissions of the Settlement Agents were implemented as part of a conspiracy with Taneja.

36. The unlawful acts and omissions and fraudulent acts of the Settlement Agents and Taneja were adverse to the interests of FMI and FMI's creditors.

37. The unlawful acts and omissions and fraudulent acts of the Settlement Agents and Taneja harmed FMI and its creditors and the creditors of the Debtors' bankruptcy estates.

38. Taneja and the Settlement Agents, by their unlawful and fraudulent acts, depleted and wasted the assets of FMI and caused FMI to become insolvent.

39. The Trustee seeks to recover from Commonwealth and the Settlement Agents the losses inflicted upon FMI as a result of the acts identified hereinabove.

**Commonwealth Contracts Issued Through the Settlement Agents**

40.     Commonwealth, acting through its Settlement Agents, issued title commitments, title insurance policies and CPLs in each of the transactions identified in Paragraphs 23 through 25.

41.     The title commitments that Commonwealth issued through the Settlement Agents obligated Commonwealth to issue a title insurance policy containing — and bound Commonwealth to — the terms of the American Land Title Association ("ALTA") Loan Policy, as revised on October 17, 1992 ("ALTA Loan Policy").  Under the terms of the ALTA Loan Policy, Commonwealth insures, among other things, against loss or damage (not to exceed the amount of insurance stated in the policy) sustained or incurred by the "insured" by reason of: "[t]itle to the estate or interest described in Schedule A being vested other than as stated therein; [a]ny defect in or lien or encumbrance on the title; [u]nmarketability of the title; *** [t]he invalidity or unenforceability of the lien of the insured mortgage upon the title; [or t]he priority of any lien or encumbrance over the lien of the insured mortgage."

42.     Each ALTA Loan Policy provides that Commonwealth "will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations."

43.     In the CPLs Commonwealth issued, Commonwealth agreed, subject to certain terms and conditions, to reimburse FMI and its successors or assigns for certain losses incurred in connection with the closing described in the CPL.  Specifically, Commonwealth agreed to reimburse FMI and its successors or assigns for losses that

14

arise out of a "[f]ailure of the Issuing Agent [Settlement Agents] to comply with your written closing instructions to the extent that they relate to (a) the status of the title to and said interest in land, including the obtaining of documents and disbursement of funds necessary to establish such status of title or lien."

44. Commonwealth also agreed to reimburse FMI and its successors or assigns for losses that arise out of "[f]raud or dishonesty of the Issuing Agent [Settlement Agents] or Approved Attorney in handling your funds or documents in connection with such closings to the extent such fraud or dishonesty relates to the status of the title to said interest in land or to the validity, enforceability and priority of the lien of said mortgage on said interest in land."

## COUNT I
### (Breach of Contract) - Commonwealth

45. Plaintiff re-alleges and incorporates Paragraphs 1 through 44 hereof as if fully set forth.

46. The title commitment, title insurance policy and CPL that Commonwealth issued for each of the properties identified in Paragraphs 23 through 25 together constitute one valid and enforceable contract for each settlement transaction.

47. On information and belief, all premiums due under the title commitments, title insurance policies and CPLs have been paid and all obligations and conditions, whether express or implied, under the title commitments, title insurance policies and CPLs either have been satisfied or were not satisfied solely because of, and as a direct result of, the defalcations and/or failures of the Settlement Agents.

15

48.     As described hereinabove, FMI has suffered loss or damage, including, but not limited to, loss and damage due to the undisclosed and unsatisfied encumbrances on the titles for the properties identified in Paragraphs 23 through 25 above.

49.     FMI has also been harmed by the Settlement Agents' acts, omissions, fraud and dishonesty in handling funds or documents in connection with such closings. The Settlement Agents' acts, omissions, fraud and dishonesty relates to the status of the title to each property and to the validity, the enforceability and priority on the title of each of the property identified in Paragraphs 23 through 25; and the fraudulent use and misappropriation of settlement funds.

50.     FMI's damage and injuries are covered by the terms of the title commitments, title insurance policies and CPLs issued by Commonwealth (through the Settlement Agents) for the real estate transactions at issue in this case. As a result, Commonwealth is obligated to compensate FMI for the damages and losses that FMI incurred.

51.     The Trustee has demanded that Commonwealth pay each claim pursuant to each CPL, title commitment and/or title policy.

52.     Commonwealth is in breach of the title commitments, title insurance policies and CPLs it issued through the Settlement Agents' and Commonwealth's breaches have directly and proximately deprived, and threaten to further deprive, FMI of the applicable insurance coverage and incurred in defense of other actions against FMI.

53.     Commonwealth's breach of the title commitments, title insurance policies and CPLs it issued through the Settlement Agents have also caused reasonably foreseeable consequential harm to FMI. These consequential harms include, without

16

limitation, the attorneys' fees and expenses involved in the prosecution of this action and incurred in the defense of other actions against FMI.

## COUNT II
### (Negligence) – Commonwealth and Park Street

54. Plaintiff re-alleges and incorporates Paragraphs 1 through 53 hereof as if fully set forth.

55. Park Street, as a settlement agent in the Commonwealth of Virginia and in the State of Maryland, was under a duty to use reasonable care in performing its responsibilities as a title agent. Park Street's responsibilities included, but were not limited to, issuing title insurance, recording title instruments (such as deeds, deeds of trust, mortgages and other title-related documents), performing record searches, reporting the results of record searches, preparing title and closing documents and receiving and disbursing funds.

56. As alleged in this complaint, Park Street, acting as Commonwealth's agent, breached its duty to use reasonable care in performing these responsibilities. For example, Park Street's breaches of duty to use reasonable care included, but were not limited to, failing to disclose the existence of encumbrances that had been duly recorded in county land records, failing to record deeds of trust in county land records, and failing to use settlement proceeds to pay down title encumbrances as reflected in HUD settlement statements.

57. FMI was injured by Park Street's breaches of its duties because the breaches created the false impression that the notes purchased by FMI were secured by valid deeds of trust with "first lien" priority.

58.    Park Street's breaches of its duties as title agents proximately caused FMI's injuries. It was foreseeable that FMI would rely upon the title-related documents prepared by Park Street. It was similarly foreseeable that FMI's secondary mortgage market purchasers would trust that Park Street executed its settlement-related duties by, among other things, processing improperly or fraudulently notarized documents, accurately noting prior recorded encumbrances to title, recording title-related documents and paying off prior encumbrances in accordance with the HUD settlement statement for the transaction.

59.    Commonwealth is liable for the harms caused by Park Street's negligence because Park Street acted with Commonwealth's actual and/or apparent authority when it committed the negligent acts and thereby harmed FMI.

## COUNT III
## (Negligence) – Commonwealth and Chancellor

60.    Plaintiff re-alleges and incorporates Paragraphs 1 through 59 hereof as if fully set forth.

61.    Chancellor, as a settlement agent in the Commonwealth of Virginia, was under a duty to use reasonable care in performing its responsibilities as a title agent. Chancellor's responsibilities included, but were not limited to, issuing title insurance, recording title instruments (such as deeds, deeds of trust, mortgages and other title-related documents), performing record searches, reporting the results of record searches, preparing title and closing documents and receiving and disbursing funds.

62.    As alleged in this complaint, Chancellor, acting as Commonwealth's agent, breached its duty to use reasonable care in performing these responsibilities. For example, Chancellor's breaches of duty to use reasonable care included, but were not

18

limited to, failing to disclose the existence of encumbrances that had been duly recorded in county land records, failing to record deeds of trust in county land records, and failing to use settlement proceeds to pay down title encumbrances as reflected in HUD settlement statements.

63. FMI was injured by Chancellor's breaches of its duties because the breaches created the false impression that the notes purchased by FMI were secured by valid deeds of trust with "first lien" priority.

64. Chancellor's breaches of its duties as title agents proximately caused FMI's injuries. It was foreseeable that FMI would rely upon the title-related documents prepared by Chancellor. It was similarly foreseeable that FMI's secondary mortgage market purchasers would trust that Chancellor executed its settlement-related duties by, among other things, processing improperly or fraudulently notarized documents, accurately noting prior recorded encumbrances to title, recording title-related documents and paying off prior encumbrances in accordance with the HUD settlement statement for the transaction.

65. Commonwealth is liable for the harms caused by Chancellor's negligence because Chancellor acted with Commonwealth's actual and/or apparent authority when it committed the negligent acts and thereby harmed FMI.

## **REQUEST FOR RELIEF**

WHEREFORE, H. Jason Gold, Chapter 11 Trustee, requests that judgment be entered in his favor and against Commonwealth Land Title Insurance Company, Park Street Title, Inc. and Chancellor Title & Settlements, Inc., jointly and/or severally, as follows:

    a.    An award of all damages against Commonwealth Land Title Insurance Company pursuant to Count I pursuant to the closing protection letters, title commitments and title policies in the sum of $8,641,150, together with damages as provided for in the closing protection letters; and

    b.    An award of all damages against Park Street Title, Inc. and Commonwealth Land Title Insurance Company, pursuant to Count II in the sum of $8,031,150, together with all consequential damages; and

    c.    An award of all damages against Chancellor Title & Settlements, Inc. and Commonwealth Land Title Insurance Company, pursuant to Counts III in the sum of $610,000, together with all consequential damages; and

    d.    An award of all recoverable pre-judgment and post-judgment interest; and

    e.    An award of attorney fees pursuant to Count I; and

    f.    An award of all the costs and expenses of suit incurred by the Trustee herein; and

    g.    An award for such other and further relief as this Court deems just and proper.

Dated: June 9, 2010                         Respectfully submitted,

                                         /s/ James P. Campbell
                               James P. Campbell, Esquire (VSB #25097)
*Campbell Flannery, P.C.*
19 East Market Street
Leesburg, Virginia 20176
(703) 771-8344/Telephone
(703) 777-1485/Facsimile
*Special Counsel for*
*H. Jason Gold, Chapter 11 Trustee*

S:\Civil\Clients\Taneja, Vijay K\Commonwealth\Complaint - Final.doc